IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**OLYMPIC AUTOMOTIVE & ACCESSORIES, et al.,**

**Plaintiffs,**

**v.**

**CIVIL NO. 14-1026 (GAG)**

**PUERTO RICO ELECTRIC POWER AUTHORITY (PREPA), et al.,**

**Defendants.**

## OPINION AND ORDER

Olympic Automotive & Accessories ("Olympic"), The Wellness Inc. and José Joaquín Robles (collectively "Plaintiffs") bring this action against the Puerto Rico Electric Power Authority ("PREPA") and several of its officers (collectively "Defendants"), arguing that Defendants violated their due process rights under the Fourteenth Amendment of the United States Constitution and their statutory rights under Law 33 of June 27, 1985, P.R. LAWS ANN. TIT. 27 §§ 262 et. seq. ("Law 33"). (Docket No. 51 at 2-3.) Plaintiffs support their claims positing that Defendants willfully discouraged and prevented them access to PREPA's administrative procedures to object and challenge the cost of their power service. (Docket No. 1.) Plaintiffs thus seek equitable relief, asking the court to enjoin Defendants from disconnecting their power and order its reconnection. Id. at 2. They also seek monetary relief. Id.

Pending before the court is Defendants' motion to dismiss under Fed. R. Civ. P. 12 (b) (1) and 12 (b) (6) (Docket No. 51), which Plaintiffs opposed. (Docket No. 54.) After reviewing the parties' submissions and the pertinent law, the court **GRANTS** Defendants' motion to dismiss.

**Civil No. 14-1026 (GAG)**

**I.     Standard of Review**

1.   Federal Rule of Civil Procedure 12(b)(1)

As courts of limited jurisdiction, the federal courts must construe their jurisdictional grants narrowly. Destek Grp. v. State of N.H. Pub. Utils. Comm'n., 318 F.3d 32, 38 (1st Cir. 2003). Consequently, the party asserting jurisdiction carries the burden of showing the existence of federal jurisdiction. Viqueira v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998). When deciding whether to dismiss a complaint for lack of subject matter jurisdiction, the court "may consider whatever evidence has been submitted, such as . . . depositions and exhibits." Aversa v. United States, 99 F.3d 1200, 1210 (1st Cir. 1996); Torres v. Bella Vista Hosp., Inc., 523 F. Supp. 2d 123, 132 (D.P.R. 2007). Motions brought under Rule 12(b)(1) are subject to the same standard of review as Rule 12(b)(6) motions. Negrón-Gaztambide v. Hernández-Torres, 35 F.3d 25, 27 (1st Cir. 1994); Torres, 523 F. Supp. 2d at 132.

2.   Federal Rule of Civil Procedure 12(b)(6)

When considering a motion to dismiss for failure to state a claim upon which relief can be granted, see FED. R. CIV. P. 12(b)(6), the court analyzes the complaint in a two-step process under the current context-based "plausibility" standard established by the Supreme Court. See Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citing Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) which discusses Ashcroft v. Iqbal, 556 U.S. 662 (2009) and Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)). First, the court must "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." Id.   A complaint does not need detailed factual allegations, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678-79. Second, the court must then "take the

complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." Schatz, 669 F.3d at 55. Plausible, means something more than merely possible, and gauging a pleaded situation's plausibility is a context-specific job that compels the court to draw on its judicial experience and common sense. Id. (citing Iqbal, 556 U.S. at 678-79). This "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. Twombly, 550 U.S. at 556.

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)). If, however, the "factual content, so taken, 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,' the claim has facial plausibility." Ocasio-Hernández, 640 F.3d at 12 (quoting Iqbal, 556 U.S. at 678).

In ruling on a motion to dismiss, a court must accept as true all the factual allegations in the complaint and construe all reasonable inferences in favor of the plaintiffs. Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 16 (1st Cir. 1998). Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment. Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993); Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001). There is, however, a narrow exception "for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." Id. See Alternative Energy, Inc., 267 F.3d at 33-34. When a [pleading] rel[ies] upon a document, whose authenticity is not challenged, such a

**Civil No. 14-1026 (GAG)**

document "merges into the pleadings" and the court may properly consider it under a Rule 12(b)(6) motion to dismiss. Alternative Energy, Inc., 267 F.3d at 34; Beddall, 137 F.3d at 17; accord Clorox Co. P.R. v. Proctor & Gamble Commercial Co., 228 F.3d 24, 32 (1st Cir.2000) (considering advertising material outside of the complaint in a motion to dismiss false advertising claim because material was "integral" to assessing the complaint's allegations).

## II.     Relevant Factual and Procedural Background

1. On September 20, 2012, Plaintiffs sent PREPA a letter objecting to the September 2012 power bill, arguing that eighty percent (80%) of the total amount billed consisted of "hidden charges," requesting the source of these charges and indicating that it paid what it believed was the correct amount. (Docket No. 16-1 at 1.)

2. PREPA initiated an internal investigation to address Plaintiffs' complaints. (Docket No. 29-1 at 2.) As a result, PREPA recalculated the account. (Docket No. 51 at 4.)

3. On October 25, 2012, Plaintiffs sent PREPA a letter objecting to the October 2012 bill. PREPA received the letter on November 9, 2012. (Docket No. 29-1 at 9.) PREPA then recalculated and adjusted the account. (Docket No. 51 at 4.)

4. On November 15, 2012, PREPA notified Plaintiffs of the results of the investigation performed as to the September 2012 bill. The letter explained Plaintiffs' rights under Law 33 and that to continue with the administrative process and take the objection further, it had to request a revision with the Region Administrator. (Docket No. 16-1 at 14.)

5. On November 21, 2012, unsatisfied by the investigation's outcome, Plaintiffs sent PREPA a letter objecting the evaluation performed and requesting further review of the September 2012 bill. Id.

4

**Civil No. 14-1026 (GAG)**

6. On November 28, 2012, PREPA notified Plaintiffs of the results of the investigation performed as to the October 2012 bill and attached the formulas used to calculate the fuel and energy costs. (Docket No. 29-1 at 11.) PREPA again explained Plaintiffs' rights under Law 33 and the proper course of action to take its objections further. PREPA indicated that if Plaintiffs failed to follow the process, the amount owed and objected to would reflect in the following month's bill as delayed pay, which constitutes cause for suspension of service. Id.

7. On December 5, 2012, Plaintiffs sent a letter to PREPA acknowledging receipt of PREPA's November 28 letter and stated that it was unsatisfied with the investigation's outcome and was thus going to challenge the decision. (Docket No. 16-1 at 17.)

8. On December 28, 2012, in reply, PREPA sent Plaintiffs two letters, which addressed the September and October 2012 bill objections, respectively. (Docket No. 16-1 at 18; 29-1 at 13.) In both letters, PREPA indicated that it reviewed the prior administrative decision as to both bills and that it was sustaining the decision of PREPA's District Manager. The letters explained the course of action to follow if Plaintiffs decided to take their objections further. PREPA made clear that if no further review was requested nor payment was made within ten (10) days, the amount objected to would reflect in the next bill, which constitutes cause for suspension of service. Id.

9. On March 21, 2013, PREPA contacted Plaintiffs' representative, Limaris Cotto, and offered a payment agreement for the due amounts. (Docket No. 51 at 5.)

10. On April 11, 2013, PREPA interrupted Plaintiffs' power for non- payment. Plaintiffs' counsel sent PREPA a letter objecting to the service interruption, alleging that an objection to the bill was pending. (Docket No. 29-1 at 16.) In turn, PREPA reestablished the service. Id.

11. On April 15, 2013, Olympic sent PREPA a letter challenging the way the power bill was structured. (Docket No. 29-1 at 17.)

12. On April 24, 2013, in a good faith effort to settle the bill objections, a meeting was held between representatives of both Plaintiffs and PREPA. (Docket No. 51 at 6.) PREPA's representatives explained that the process under Law 33 was to object to the charges of the bill and not the billing structure itself. PREPA explained that Plaintiffs' prior objections (September and October 2012) were dismissed because they failed to comply with Law 33's administrative process. (Docket No. 29-1 at 19-22.)

13. On May 8, 2013, PREPA sent Plaintiffs a letter, which addressed the arguments raised in an April 16 and the April 24, 2013 meetings. It confirmed that Plaintiffs' prior bill objections were dismissed for failure to comply with the prescribed processes of Law 33. (Id. at 24.)

14. On November 27, 2013, after six (6) months of non-payment of the amounts due, PREPA sent Plaintiffs' account to a collection process. (Docket No. 51 at 6.)

15. On December 2, 2013, almost seven (7) months after Plaintiffs' last notice of service interruption for non-payment, Plaintiffs' service was suspended by PREPA. Id.

16. On December 6, 2013, Plaintiffs sent PREPA a letter raising objections to the total amounts of the electricity charges for the September, October, November, and December 2013 bills. (Docket No. 16-1 at 33.)

17. On December 19, 2013, PREPA's Executive Director received a letter from Plaintiffs, which specified that under Law 33, PREPA was preempted from suspending its power while a revision process was pending, and thus argued that the suspension was illegal. Id. at 36.

18. On December 20, 2013, PREPA replied to Plaintiffs and once again explained that the September and October 2012 bill objections were dismissed due to Plaintiffs' failure to comply with Law 33. It also explained that the objected amounts are reflected as arrears and the account had an outstanding balance of $28,249.43, so to reactivate the service, a payment bond had to be

**Civil No. 14-1026 (GAG)**

deposited to satisfy the balance.  PREPA also offered a pay-out agreement.  (Docket No. 29-1 at 26-27.)

19. On January 13, 2014, Plaintiffs filed the instant action.  (Docket No. 1.)

**III.  Discussion**

Plaintiffs objected various power bills and claim that in that Defendants violated their rights because they allegedly discouraged, impeded or prevented them access to the bill objection process established under Law 33 and bypassed said process.  Plaintiffs also argue that PREPA illegally suspended Plaintiffs' power.  Defendants, in turn, move to dismiss Plaintiffs' claims for failure to state a Section 1983 claim upon which relief can be granted alleging that Plaintiffs did not avail themselves of the remedies guaranteed by Law 33, nor did they prove that the available state remedies are inadequate.  (Docket No. 51 at 2-3.)  They also move to dismiss on various abstention grounds.  Id.  In response, Plaintiffs vouch for the validity of their claims and attest that Defendants failed to meet the standards for the sought after abstentions.  (Docket No. 54 at 1.)

In their motion to dismiss, Defendants expressly incorporated and made reference to various documents made part of the record at Docket No. 16, which are translated at Docket No. 29, that evince Plaintiffs and Defendants' correspondence and engagement in the Law 33 process concerning the bill objections raised by Plaintiffs.  Under First Circuit precedent, when "a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged)," then the court can review it upon a motion to dismiss.  Beddall, 137 F.3d at 17; Alternative Energy, Inc., 267 F.3d at 34.  Here, the complaint is centered on Defendants' responses to Plaintiffs' bill objections and alleged *ultra vires* actions during the pendency of the objection process.  Plaintiffs' complaint fails to state a claim unless they show that Defendants violated their guaranteed rights.  Plaintiffs never challenged

**Civil No. 14-1026 (GAG)**

Defendants' incorporation of said documents into their motion to dismiss, nor did they dispute their authenticity. Thus, the documents incorporated by Defendants and unopposed by Plaintiffs became part of the pleadings for the motion to dismiss.[1]

Having determined that Defendants' documents at Docket No. 16 and 29 became part of the pleadings for the motion to dismiss, the court next addresses the merits of the motion.

1. Failure to State a Section 1983 Claim and the Exhaustion of Administrative Remedies

Defendants contend that Plaintiffs cannot sustain their § 1983 claims because they failed to avail themselves of available and adequate administrative state processes and remedies. "A § 1983 action may be brought for a violation of procedural due process, but here the existence of state remedies *is* relevant in a special sense." Zinermon v. Burch, 494 U.S. 113, 125 (1990). To state a due process claim on which relief can be granted under § 1983, a plaintiff must allege deprivation of a protected property interest, because there can be no due process violation without such an interest. Board of Regents v. Roth, 408 U.S. 564, 569 (1972).

In procedural due process claims, the deprivation by state action of a constitutionally protected interest in "life, liberty, or property" is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law.* Zinermon, 494 U.S. at 125. See Parratt v. Taylor, 451 U.S. 527, 537 (1978); Carey v. Piphus, 435 U.S. 247, 259 (1978) ("Procedural due process rules are meant to protect persons *not* from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property"). "The constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete *unless and until* the State fails to provide due process." (emphasis ours). Zinermon, 494 U.S. at

---

[1] Moreover, because this motion is filed under Rule 12(b)(1) as well as under Rule 12(b)(6), the court can look beyond the pleadings and examine the abovementioned documents. See Gonzalez v. United States, 284 F.3d 281, 288 (1st Cir. 2002), as corrected (May 8, 2002).

125-126.  Thus, to determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate.  See id.

Plaintiffs' allegations fall within the procedural category of § 1983, based on the Due Process Clause, which guarantees a fair procedure.  See id. at 125.  The due process requirement means that Government, in this case PREPA, must provide to the consumer the remedies it promised would be available under state law.  See Hudson v. Palmer, 468 U.S. 517, 539 (1984); Parratt, 451 U.S. at 537–544.  In challenging a property deprivation, the claimant must either: (1) avail himself of the remedies guaranteed by state law; or (2) prove that the available remedies are inadequate.  See Parratt, 451 U.S. at 537–544.  When adequate remedies are provided and followed, no uncompensated taking or deprivation of property without due process can result.  Id.

Relevant to the complaint at issue, the process the State provides is established under law 33 and because "the existence of state remedies *is* relevant in a special sense" here, the court discusses the exhaustion of administrative remedies doctrine.  See Zinermon, 494 U.S. at 125.  To Exhaustion of administrative remedies "provides that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." McKart v. United States, 395 U.S. 185, 193 (1969).  The McKart Court explained that the main purpose of exhausting available administrative remedies is to avoid premature interruption of the administrative process because it is generally inefficient to permit a party to seek judicial recourse without first exhausting his administrative remedies.[2]  See id. at 194.  The Supreme Court has concluded that, by and large, concerns regarding efficiency militate in favor of, rather than against,

---

[2] "It is normally desirable to let the agency develop the necessary factual background upon which decisions should be based. And since agency decisions are frequently of a discretionary nature or frequently require expertise, the agency should be given the first chance to exercise that discretion or to apply that expertise." McKart, 395 U.S. at 193.

strict application of the exhaustion doctrine. See McCarthy v. Madigan, 503 U.S. 140, 144 (1992); McKart, 395 U.S. at 195.

The First Circuit has emphasized the importance of exhausting of administrative remedies. Portela-González v. Sec'y of the Navy, 109 F.3d 74, 77-79 (1st Cir. 1997) ("Insisting on exhaustion forces parties to take administrative proceedings seriously, allows administrative agencies an opportunity to correct their own errors, and potentially avoids the need for judicial involvement altogether"); Ezratty v. Comm. of Puerto Rico, 648 F.2d 770, 774 (1st Cir.1981) (acknowledging that the exhaustion doctrine "serves interests of accuracy, efficiency, agency autonomy and judicial economy."). Furthermore, disregarding available administrative processes thrusts parties prematurely into overcrowded courts and weakens an agency's effectiveness by encouraging end-runs around it. See McCarthy, 503 U.S. at 145; McKart, 395 U.S. at 195. As such, exhaustion is mandatory, which means that a party *must* exhaust all available avenues of administrative review "regardless of the particular relief offered (or not offered) through a given set of administrative procedures." See Frazier v. Fairhaven Sch. Comm., 276 F.3d 52, 62 (1st Cir. 2002); Booth v. Churner, 532 U.S at 731, 739 (2001); Woodford v. Ngo, 548 U.S. 81, 85 (2006). Exhaustion of remedies "has a decidedly procedural emphasis." See Booth, 532 U.S. at 739; Johnson v. Thyng, 369 F. App'x 144, 146-47 (1st Cir. 2010). That is, what must be exhausted is the process, not the form of relief. Booth, 532 U.S at 1824.

As detailed further, Plaintiffs did not avail themselves of the existing administrative process and remedies under Law 33 to object their power bills and challenge PREPA's determinations in connection therewith. They also failed to demonstrate the existence of excusable and justifiable circumstances for which they abandoned said avenue. Moreover, Plaintiffs never alleged that the available remedies under Law 33 were inadequate. All of this is fatal to their case.

Law 33, best known as the "Act to Establish Minimum Procedural Requirements for the Suspension of Essential Public Services," was enacted with the purpose of guaranteeing consumers and subscribers an adequate opportunity to question the accuracy and the source of the charges invoiced, receive adequate notice of the decision to discontinue services for non-payment, and guarantee an adequate disclosure of the complete process. Tit. 27 § 262. It requires all public corporations, which provide essential services to the citizenry, such as PREPA, to afford an administrative procedure for said purposes. Id. The process must afford the consumer all the minimum mechanisms and guarantees established under the law. PREPA's subscribers can thus pay, or object to their bills and request an investigation thereof. Tit. 27 § 262a. The process recognized under Law 33 is the proper vehicle for consumers to object to their power bills.[3] Once the administrative process is exhausted, if the decision is adverse as to the consumer, he or she shall have "twenty (20) days from the notice of the examiner's or arbitrator's decision to resort in an appeal for review at the Court of First Instance of Puerto Rico. . . ." Tit. 27 § 262b.

### 1. September and October 2012 bill objections

Plaintiffs timely objected (within 20 days) to the September 2012 power bill. See Tit 27 § 262(a). Plaintiffs also objected to the October 2012 bill. The latter objection, nevertheless, was untimely as it was not made within the twenty (20) day timeframe. Despite the untimely objection, PREPA conducted its investigation as to both bills within the statutory timeframe, sixty (60) days

---

[3] The procedure includes the following: "(a) The subscriber shall have twenty (20) days to pay or raise objections and to request an investigation before the designated official in the local office from which he/she receives the service. . . .; (b) The instrumentality must conclude the investigation and notify the outcome thereof to the subscriber within sixty (60) days from the original objection . . . if the outcome of the investigation is adverse, he/she shall have ten (10) days from the date of notice to pay the bill or object the decision. . . before another official designated as representative of the region or district. . . who shall have twenty (20) days from the date of the objection to resolve such request; (c) The decision of the official of the region or district shall be notified to the subscriber in writing, who, if the decision is adverse, shall have ten (10) days from the date of the notice to pay, or request a revision of that decision and a hearing before the executive director of the authority concerned; (e) If the subscriber requests the revision and administrative hearing provided for in subsection (c) of this section, he/she must pay an amount equal to the average monthly or bimonthly consumption bill, as the case may be, before the hearing is held. . . ." Tit. 27, § 262b (a)-(c),(e).

notified Plaintiffs of its outcome. See Tit. 27 § 262b(b). Plaintiffs were not satisfied with the results and timely objected PREPA's determinations, respectively. PREPA again investigated and sustained its prior decision as to both bills. Plaintiffs did not request a final revision.

Upon receipt of PREPA's adverse decision, Plaintiffs had ten (10) days to request further review as to both the September and October 2012 bills and request an administrative hearing before the Executive Director. See Tit. 27 § 262b(c). Plaintiffs, however, did not follow the administrative procedure established under Law 33 to advance their objections. If Plaintiffs had requested said revision, which they failed to do, they had to make a partial payment "equal to the average monthly or bimonthly consumption bill, as the case may be, before the hearing is held . . . ." See Tit. 27 § 262b(e). By failing to follow the procedure under Law 33 to object the aforementioned power bills, Plaintiffs failed to exhaust the prescribed state administrative process.

### 2. The 2013 bill objections

On December 6, 2013, Olympic raised objections "to the total amount of the electricity charges," namely, the September, October, November, and December 2013 bills and questioned the legality of the December 2, 2013 service interruption. Plaintiffs did not raise these objections in a timely manner because, pursuant to tit. 27, § 262(a), any objection had to be raised within twenty (20) days upon receipt of the invoice. By failing to timely raise their objections as to the aforementioned bills, Plaintiffs, once more, did not follow Law 33's directives and failed to exhaust the administrative process. The only 2013 initial bill objection which Plaintiffs raised in a timely manner was for the December 2013 bill. Pursuant to tit. 27 § 262b(b), PREPA then had sixty (60) days to conduct an investigation and notify Plaintiffs of its outcome. Before the sixty (60) day time frame elapsed, Plaintiffs filed the instant action, deviating yet again from the

prescribed administrative process to object their power bills. Therefore, as to *all* the 2013 power bill objections, Plaintiffs failed to exhaust the available administrative process and remedies.

Plaintiffs correctly assert that PREPA could not disconnect their power while there were ongoing administrative processes. However, when the service was interrupted (December 2, 2013) there were no pending bill objections, thus no ongoing administrative processes. All of Plaintiffs' bill objections perished and were properly discarded by PREPA because, one way or another, Plaintiffs failed to advance them in the objection process. What is more, Plaintiffs' most recent bill objection dated December 6, 2013 came *after* the service was interrupted; therefore, said objections did not cause the interruption. The service interruption was prompted by Plaintiffs' failure to pay an accrued debt with PREPA of twenty eight (28) thousand dollars—which is no small sum.

The gist of the matter is that for *all* their bill objections, Plaintiffs failed to observe the requirements established under Law 33. Plaintiffs were required to exhaust said administrative remedies before knocking on the court's door. They left available administrative remedies untapped and the record reveals no "sufficiently excusatory circumstances to warrant spurning that remedy." See Portela-Gonzalez, 109 F.3d at 80. Plaintiffs have not adequately pleaded any reason for jumping prematurely to a judicial venue and there is nothing in the record to suggest that "full exhaustion would have caused undue prejudice, irreparable harm, or unusual hardship" to them. See id. With limited exceptions not relevant here, "failure to exhaust th[e] administrative process 'bars the courthouse door.'" Franceschi v. U.S. Dep't of Veterans Affairs, 514 F.3d 81, 85 (1st Cir. 2008) (quoting Bonilla v. Muebles J.J. Álvarez, Inc., 194 F.3d 275, 278 (1st Cir.1999)); Velazquez-Ortiz v. Vilsack, 657 F.3d 64, 71 (1st Cir. 2011). Indeed, if Plaintiffs wanted to avoid their alleged damages, they should have first exhausted the available state administrative remedies

under Law 33. Plaintiffs' failure to exhaust the administrative process and escalate through the agency's grievance procedure precludes this federal court claim. See Thyng, 369 F. App'x at 149.

Plaintiffs did not assert, other than in a conclusory manner, how Defendants intervened negatively or impeded Plaintiffs' ability to object to its bills or how Defendants hindered their access to the Law 33 procedures. Defendants on the other hand, revealed that PREPA was diligent in its responses to Plaintiffs' objections and that it observed Law 33's mandates. In its letters to Plaintiffs, PREPA explained the procedure and timeframes established under Law 33 and the consequences of failing to pay. PREPA provided Plaintiffs with adequate time to pay their bills, met with Plaintiffs to settle their bill objections, and offered them payment options. In addition, PREPA disconnected Plaintiffs' power after seven (7) months of non-payment.

To the extent that Plaintiffs allege that Defendants violated their due process and statutory rights by discouraging or preventing their access to and circumventing the administrative procedures set forth under Law 33, and illegally interrupting its power, this court cannot be sympathetic to Plaintiffs when they failed to properly follow the procedures available to them for settling this dispute. See Limerick v. Greenwald, 749 F.2d 97, 99 (1st Cir. 1984) (emphasis in original) (noting that a "claim of lack of available due process fail[s] on the merits [where] there [is] a process available under state law"). As such, Plaintiffs cannot complain that they were denied due process by PREPA when they failed to adhere to Law 33's specific processes for resolving the billing problems between them.

In addition, Plaintiffs fail to allege any facts that indicate any potential constitutional defect in any of the available state procedures—it simply failed to avail itself of those procedures. By making no attempt to avail themselves of the existing administrative procedures under Law 33, Plaintiffs "cannot complain of a violation of procedural due process rights when [they] have made

**Civil No. 14-1026 (GAG)**

no attempt to avail themselves of existing state procedures." See Boston Envtl. Sanitation Inspectors Ass'n, 794 F. 2d, 13 (1st Cir. 1986).  Where, as here, a party decides to unilaterally forsake well-defined litigation rules, he does so at his peril. See Portela-Gonzalez, 109 F.3d at 80; Municipality of San Juan, 371 F. Supp. 2d, 56 (D.P.R. 2005) (When Congress explicitly requires that administrative remedies be pursued before seeking judicial relief, litigants must strictly follow that mandate.)  The court need not go further.

Lastly, in light of the court's holding that Plaintiffs' failure to avail themselves of available administrative remedies bars their ability to seek relief from this court, the court need not address Defendants' alternative arguments for abstention.

**III.    Conclusion**

In light of the aforementioned reasoning, the court **GRANTS** Defendants' motion to dismiss at Docket No. 51 and **DISMISSES** Plaintiffs' claims.

**SO ORDERED.**

In San Juan, Puerto Rico this 23rd day of December, 2014.

                                        *s/ Gustavo A. Gelpí*
                                        GUSTAVO A. GELPI
                                        United States District Judge